UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


**Linda M. Ruivo**

   **v.**                       Case No. 11-cv-466-PB
                                   Opinion No. 2012 DNH 191

**Wells Fargo Bank, N.A.**


**MEMORANDUM AND ORDER**


This case concerns a mortgage loan that Linda Ruivo obtained from a predecessor of Wells Fargo Bank in July 2008.[1] Ruivo complains that a broker working for Wells Fargo misrepresented the terms of the loan and that Wells Fargo itself later wrongfully refused her requests to modify the loan. She asserts that Wells Fargo is liable for: (1) violating N.H. Rev. Stat. Ann. § 97-A:2(VI) by making false and misleading statements concerning the terms of the loan (Count I); (2) breaching a loan servicer agreement between Wells Fargo and the Federal National Mortgage Association ("Fannie Mae") that

---

[1] Ruvio obtained the loan from Wachovia National Bank a few months before Wachovia was acquired by Wells Fargo. Because this change in ownership has no bearing on the outcome of the case, I refer to the defendant at all times as "Wells Fargo," even though it may have been operating under a different name when certain of the events in question occurred.

requires Wells Fargo to follow loan modification guidelines established pursuant to the Home Affordable Mortgage Program ("HAMP") (Count II); (3) breaching the implied duty of good faith and fair dealing by refusing to modify the terms of the loan (Count III); and (4) negligently refusing to consider her request for a loan modification (Count IV).  Ruivo also asserts a claim for promissory estoppel based on her contention that she relied on Wells Fargo's promise that it would consider her request for a loan modification in good faith (Count V).

Presently before the court is Wells Fargo's motion to dismiss all claims.


I.  **BACKGROUND**

Ruvio owns property in Moultonborough, New Hampshire.  In the late summer or early spring of 2008, Ruvio spoke to a mortgage broker working as an agent for Wells Fargo about the possibility of refinancing her $500,000 mortgage on the property.  Following this discussion, she understood that she might be able to refinance her existing mortgage and obtain an unspecified amount of cash out through a 7% fixed rate loan.

Ruvio planned to use the additional cash from the refinancing to construct a modular home on her property.  After speaking with the broker, she made improvements to the property

and installed the modular home.  She used $27,000 of her own money and various lines of credit to fund the construction costs.

The broker informed Ruivo in June 2008 that her loan application had been approved and that she would be receiving a 7% fixed rate loan with $50,000.00 cash out at the time of closing.  At the closing, however, Ruvio learned that the loan terms had been changed to an interest-only adjustable rate loan with no cash back.  Ruvio nevertheless agreed to proceed with the refinancing because the broker told her that she had no other option and that she could refinance the loan again at a later date.

Ruivo began to experience economic difficulties in November 2009.  After concluding that she would not be able to refinance her home again, she began the process of seeking approval for a loan modification under HAMP.  In February 2011, a loan modification officer affiliated with Wells Fargo informed Ruvio that her loan modification request had been approved.  Shortly thereafter, however, the same officer told her that her request had been denied because she had a negative Net Present Value[2]

---

[2]  The HAMP guidelines require lenders to calculate a borrower's Net Present Value in determining whether the borrower is eligible for a loan modification.  See Home Affordable Mortgage Program, Base Net Present Value (NPV) Model  V.5.01 Model

("NPV") "due to too much equity." Ruivo attempted to convince Wells Fargo that the NPV determination was inaccurate because it was based on a faulty appraisal.  Wells Fargo, however, ignored her pleas and refused to modify its loan.

## II. STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must make factual allegations sufficient to "state a claim for relief that is plausible on its face."  See Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007)).  A claim is facially plausible when it pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citations omitted).

In deciding a motion to dismiss, I employ a two-pronged approach. See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011).  First, I screen the complaint for statements that "merely offer legal conclusions couched as fact or

Documentations (Oct. 1, 2011),
https://www.hmpadmin.com/portal/programs/docs/hamp_servicer/npvm
odeldocumentationv501.pdf.

threadbare recitals of the elements of a cause of action."  Id.
(citations, internal quotation marks, and alterations omitted).
A claim consisting of little more than "allegations that merely
parrot the elements of the cause of action" may be dismissed.
Id.  Second, I credit as true all non-conclusory factual
allegations and the reasonable inferences drawn from those
allegations, and then determine if the claim is plausible.  Id.
The plausibility requirement "simply calls for enough fact to
raise a reasonable expectation that discovery will reveal
evidence" of illegal conduct.  Twombly, 550 U.S. at 556.  The
"make-or-break standard" is that those allegations and
inferences, taken as true, "must state a plausible, not a merely
conceivable, case for relief."  Sepúlveda–Villarini v. Dep't of
Educ., 628 F.3d 25, 29 (1st Cir. 2010); see Twombly, 550 U.S. at
555 ("Factual allegations must be enough to raise a right to
relief above the speculative level.").


### III.  ANALYSIS

   Ruivo asserts a number of federal and state claims in five
counts.  Wells Fargo moves to dismiss each of Ruivo's claims for
failure to state a claim upon which relief can be granted.[3]  I

---

[3] Wells Fargo also argues that each of Ruvio's claims is
preempted by the Home Owners' Loan Act ("HOLA"), 12 U.S.C. §

address each count in turn.

**A.    Count I: N.H. RSA Chapter 397-A, Licensing of
       Nondepository First Mortgage Bankers and Brokers**

Ruivo claims in Count I that Wells Fargo is liable under
N.H. Rev. Stat. Ann. § RSA 397-A:2(VI).  This statute authorizes
the New Hampshire Banking Department to regulate mortgage
bankers and mortgage brokers, but it does not expressly
authorize enforcement actions by private parties.  Accordingly,
Ruvio is not entitled to base a claim on this provision unless
she can demonstrate that the legislature intended to authorize a
right to sue by implication.  See Cross v. Brown, 148 N.H. 485,
487 (2002); Snierson v. Scruton, 145 N.H. 73, 79 (2000); Marquay
v. Eno, 139 N.H. 708, 715 (1995).

Ruvio has not attempted to use either the language of the
statute or its legislative history to support her implied
private right of action claim.  Nor has she addressed the act's
enforcement provisions, which suggest that the legislature
intended the statute to be enforced by the Banking Department
rather than through suits by private parties.  See, e.g., N.H.

---

1462 et seq.  Pursuant to HOLA, the Office of Thrift Supervision
("OTS") has the power to regulate federal savings associations.
12 U.S.C. § 1464(a).  The OTS regulations preempt any state law
that attempts to regulate the operation of a federal savings
association.  12 C.F.R. § 545.2.  Because I dismiss the claims
on other grounds, I do not consider the preemption issue.

Rev. Stat. Ann. § 397-A:15-a (authorizing the filing of consumer complaints with the Banking Department); N.H. Rev. Stat. Ann. §397-A:21 (authorizing the Banking Commissioner to suspend or revoke licenses and impose penalties on violators).  Because Ruvio has failed to present a credible argument to support her implied private right of action claim, her claim must be dismissed.[4]

**B.    Count II: HAMP Claim**

Ruivo's next argument is based on the loan modification guidelines that are incorporated into the Servicer Participation Agreement ("Participation Agreement") between Wells Fargo and Fannie Mae.  Ruvio claims that she is entitled to enforce the HAMP guidelines because she is a third party beneficiary to the Participation Agreement.

The short answer to this argument is that I recently determined that a borrower such as Ruvio cannot sue as a third-party beneficiary to enforce a loan servicer agreement. Cabacoff v. Wells Fargo, 12-cv-56-PB, Opinion No. 2012 DNH 188, 2012 WL 5392545.  Ruvio has given me no reason to reconsider this determination.

---

[4]   I also reject Ruvio's eleventh-hour attempt to convert her statutory claim into a common law fraud claim.  A litigant may not amend a complaint in an objection to a motion to dismiss.

**C.    Count III: Breach of Implied Covenant of Good Faith
       And Fair Dealing**

The New Hampshire Supreme Court has recognized that "[i]n
every agreement, there is an implied covenant that the parties
will act in good faith and fairly with one another." Birch
Broadcasting, Inc. v. Capitol Broadcasting Corp., Inc., 161 N.H.
192, 198 (2010).  Ruivo claims that Wells Fargo breached this
duty by failing to adequately consider her request for a loan
modification.  Am. Compl. ¶ 82-83 (Doc No. 23).

As Wells Fargo notes in its motion to dismiss, New
Hampshire does not recognize a claim for breach of the implied
covenant of good faith and fair dealing absent a contract
between the parties.  See J & M Lumber & Const. Co., Inc. v.
Smyjunas, 161 N.H. 714, 724 (2011).  Ruivo therefore cannot base
her good faith and fair dealing claim on the Participation
Agreement because, as I have explained, she cannot sue as a
third-party beneficiary to enforce the agreement.  Therefore,
any claim she may have for breach of the implied covenant of
good faith and fair dealing must arise from her mortgage loan
contract with Wells Fargo.

In New Hampshire, contracting parties are obligated to act
in good faith when exercising discretion in performing their
contractual duties.  See Scott v. First Am. Title Ins. Co., No.

8

06-CV-286-JD, 2007 WL 135909, at *5 (D.N.H. Jan. 17, 2007)
(citing Ahrendt v. Granite Bank, 144 N .H. 308, 312-13 (1999)).
This duty of good faith prohibits "behavior inconsistent with
the parties' agreed-upon common purpose and justified
expectations as well as 'with common standards of decency,
fairness, and reasonableness.'" Birch Broadcasting, 161 N.H. at
198 (quoting Livingston v. 18 Mile Point Drive, 158 N.H. 619,
624 (2009)).  The duty of good faith and fair dealing applies,
however, only when the agreement grants a contracting party
discretion in performing his duties under the agreement and an
unreasonable exercise of that party's discretion causes harm to
the other contracting party.[5]  Scott, 2007 WL 135909, at *5
(citing Ahrendt, 144 N.H. at 312-13).

Ruivo claims that Wells Fargo unreasonably exercised
discretion granted to it under the loan agreement, but she does
not point to any specific provision in the agreement to support
her claim.  Instead, she appears to argue that Wells Fargo is
liable because it abused the discretion that a party to a

_____

[5] The duty of good faith and fair dealing also may be invoked
with respect to issues concerning contract formation and the
termination of at will employment.  See Birch, 161 N.H. at 198.
These aspects of the duty of good faith and fair dealing,
however, have no bearing on the present dispute.

contract always has to agree to another party's request to modify the contract.  I am unpersuaded by this argument.

Parties are bound by the agreements they enter into and the court will not use the implied covenant of good faith and fair dealing to force a party to rewrite a contract so as to avoid a harsh or inequitable result.  Moore v. Mortg. Elec. Registration Sys., Inc., 848 F. Supp. 2d 107, 130; Olbres v. Hampton Co-op. Bank, 142 N.H. 227, 233 (1997); Mills v. Nashua Fed. Savs. & Loan Assoc., 121 N.H. 722, 726 (1981).  Accordingly, "[c]ourts have generally concluded that the covenant of good faith and fair dealing in a loan agreement cannot be used to require the lender to modify or restructure the loan."  Moore, 848 F. Supp. 2d at 130 (citing FAMM Steel, Inc. v. Sovereign Bank, 571 F.3d 93, 100-01 (1st Cir. 2009)).

The loan agreement between Ruvio and Wells Fargo does not obligate Wells Fargo to consider requests to modify the loan. Accordingly, Ruvio has failed to state a claim for breach of the implied covenant of good faith and fair dealing.

D.   **Count IV: Negligence**

Ruivo claims in Count IV that Wells Fargo assumed a duty to exercise reasonable care in considering her request for a loan modification by agreeing to the Participation Agreement.  She then asserts that it acted negligently in refusing to accede to

her request to modify the loan.  Wells Fargo responds by claiming that a borrower may not base a negligence claim on an alleged breach of a Participation Agreement.  (Doc. No. 25-1) (citing Moore, 848 F. Supp. 2d at 133).

In New Hampshire, a breach of contract, without more, generally does not give rise to a tort claim.  See Wyle v. Lees, 162 N.H. 406, 410 (2011); Plourde Sand & Gravel v. JGI E., Inc., 154 N.H. 791, 794 (2007); Lawton v. Great Sw. Fire Ins. Co., 118 N.H. 607, 613 (1978) (citing Barrett v. New England Tel. & Tel. Co., 80 N.H. 354 (1922)).  Instead, a separate claim in tort will lie only if the facts constituting the breach of contract also breach an independent tort duty owed by the defendant to the plaintiff.  Lawton, 118 N.H. at 613.  Accordingly, to recover in tort, Ruivo must show that her losses resulted from Wells Fargo's breach of an independent duty arising "outside the terms of" the Participation Agreement.  See Animal Hosp. of Nashua, Inc. v. Antech Diagnostics, 11-CV-448-SM, 2012 WL 1801742, at *2 (D.N.H. May 17, 2012).

As I have explained, Ruivo cannot sue as a third-party beneficiary to the Participation Agreement and she cannot overcome this deficiency simply by recharacterizing her third-party beneficiary claim as a tort claim.  To the extent that she argues that Wells Fargo owes her a tort duty to renegotiate her

loan because they have "special relationship," this argument is also unpersuasive.  In limited circumstances, a bank can be held liable to a borrower in tort "whenever influence has been acquired and abused [by the lender] or confidence has been reposed and betrayed."  Seymour v. N.H. Sav. Bank, 131 N.H. 753, 759 (1989) (quoting Lash v. Cheshire County Savings Bank, 124 N.H. 435, 438 (1984)); see also Ahrendt, 144 N.H. at 314; Murphy Fin. Dev. Corp., 126 N.H. 536, 541 (1985); Robinson v. Colebrook Guar. Sav. Bank, 109 N.H. 382, 384 (1969).  The court, however, has never held that a bank has a tort duty to entertain a borrower's application to modify a lawful loan agreement and I decline to recognize such a duty here.

**E.   Count V: Promissory Estoppel, in the Alternative**

Ruivo also asserts a claim for promissory estoppel.  Under this equitable principle, "a promise reasonably understood as intended to induce action is enforceable by one who relies on it to his detriment or to the benefit of the promisor." Panto v. Moore Bus. Forms, Inc., 130 N.H. 730, 738 (1988) (citing Restatement (Second) of Contracts § 90 (1981)).  Promissory estoppel is only applied the absence of an express agreement. Great Lakes Aircraft Co., Inc. v. City of Claremont, 135 N.H. 270, 290 (1992).  "It serves to impute contractual stature based upon an underlying promise, and to provide a remedy to the party

who detrimentally relies on the promise." Id. (citing 2A Corbin on Contracts § 196A, at 55–56 (Supp. 1991)).

Ruivo claims that Wells Fargo promised her that it would consider her loan modification request in good faith but she fails to plausibly allege a claim either that she relied on the promise to her detriment or that Wells Fargo benefitted in some way from making the promise.  It is not sufficient to allege, as she has done, only that she has been harmed by losing out on the benefit of a renegotiated loan.  Accordingly, she has failed to state a viable promissory estoppel claim.

## IV.  CONCLUSION

For the reasons set forth above, I grant defendant's motion to dismiss (Doc. No. 25).  The clerk shall enter judgment accordingly and close the case.

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge


November 19, 2012

cc:  David H. Bownes, Esq.
     David M. Bizar, Esq.